## Hunt *vs* Fox, &c.

ERROR TO THE PULASKI CIRCUIT.

*Rescission of contracts. Lien. Mortgages.*

JUDGE BRECK delivered the opinion of the Court.

CHANCERY.

*Case* 78.

*April* 21.

The case stated.

IN January, 1838, Ephraim C. Faris sold to Samuel Hunt and John B. McCormick, between four and five thousand acres of land, including certain coal mines on Cumberland river, in the counties of Pulaski and Whitley, and gave his bond to perfect the title, having at the time, only an equitable title to a part of the lands embraced in the contract, and convey the same to Hunt and McCormick, by deed of general warranty, within sixty days, and so soon as they should pay $7,000, the whole consideration being $8,000, and the other thousand to be paid out of the proceeds of the sale of coal, after Hunt and McCormick obtained the possession.

At the same time, the defendant in error, F. T. Fox, gave his bond to Hunt and McCormick, for a release by himself, Curd, and Fitzpatrick, of all the title and interest which they had in the lands thus sold, in virtue of certain mortgages to them from Faris, upon the payment of $7,000. Some portion of this sum was paid to Fox at the time, and in July following, Faris drew a bill upon Hunt for $1,420, in favor of Curd and Fox, which was at the same time accepted, and at maturity paid by Hunt. Hunt also, at same time, gave his note to Curd and Fox for $1,608 80, which, with the bill for $1,420, and the amount previously paid by him, made his half of the $7,000, it being understood, although joint purchasers, that Hunt and McCormick were each to pay a moiety of the purchase money. The note was dated back to the 1st June preceding, and drawn as due at that time. On

the 5th July, the day after the acceptance of the bill and the execution of the note, Faris acknowledged a deed to Hunt and McCormick, for a large, and the most valuable portion of the land. The deed was dated in April preceding, was acknowledged before the Clerk or his deputy, of the Pulaski County Court, and left in the office for the acknowledgment of Mrs. Faris, whose name was united in the deed with that of her husband.

In 1839, Curd and Fox exhibited their bill in the Pulaski Circuit Court, against Hunt and Faris, setting up the note, which they held upon Hunt, and alledging that it was given in consideration of Hunt's half of the purchase money for the land sold him and McCormick by Faris. That the land had been conveyed to Hunt and McCormick, by Faris, and praying that the interest of Hunt, he being a non-resident, might be subjected to the payment of their note. Hunt failed to answer, and in 1841, Curd and Fox obtained a decree for the sale of his interest in the land conveyed, as alledged, to him and McCormick, by Faris, for the payment of their note.

Curd, Fox, and Fitzpatrick, at same time, executed and filed in the suit, a deed of release to Hunt, of all their title and interest in the lands.

In July following, the interest of Hunt was sold under the decree and Fox became the purchaser at a very inconsiderable sum, less than two hundred dollars.

On the same day, and before the sale, Hunt exhibited his bill against Curd and Fox, McCormick, the widow and heirs of Faris, &c. referring to the decree and record in the suit of Curd and Fox, alledging the death of Faris, and that he died insolvent, and that his widow was asserting her dower in the most valuable portion of the land sold him and McCormick by her husband—that Faris had failed to remove incumbrances and to perfect the title, and convey the lands according to his contract— that as to the deed relied upon by Curd and Fox as having been made to him by Faris, that he had never accepted it nor authorized any one to accept it for him—that it embraced only a portion of the land. He further charges, that at the time of his purchase, Fox assured him that there would be no difficulty in regard to the title;

and when he gave Curd and Fox the note which they held on him, it was distinctly understood it was not to be paid till the title was perfected and the conveyance made by Faris, which they represented would be in a few days, and that Fox promised to give particular attention to the execution of the deed, and see that all was done right.

He states his willingness to keep the land if he can obtain the title according to the contract, but if he cannot, he prays a rescission, relief against the the note held on him by Curd and Fox, that they may be decreed to refund the amount paid them, and that he may have a prior lien upon the land for the re-payment thereof.

A few days after the exhibition of this bill, Hunt, upon petition, was permitted to file an answer in the suit of Curd and Fox, and to open the decree. The answer is made a cross bill, and the same matters relied upon as in his original bill. Curd and Fox deny, in their answer, that they had made such representations, or given such assurances in regard to the title as alledged; they deny any understanding that the note was not to be paid till the title was perfected and conveyance made, and insist that the deed made to Hunt and McCormick by Faris, was accepted by them, &c.

The suits having been consolidated and heard together, the Circuit Court decreed, that the contract between Faris and Hunt and McCormick be rescinded, and that the deed, purporting to be a conveyance for a part of the land, be cancelled, so far as Hunt was concerned, and that the sale of the land under the decree of Curd and Fox, be set aside; that Hunt was entitled to a lien upon the land for the re-payment of the purchase money which had been paid by him, but that his bill, so far it sought relief against his note to Curd and Fox, be dismissed, and that they be permitted to pursue their remedy upon it at law; that they are also entitled to a lien upon the land for the payment thereof, and to priority over Hunt out of the proceeds of the sale of the land under his lien, if not otherwise paid.

*The decree of the Circuit Court.*

The parties agreed that a writ of error might be prosecuted upon the decree as if it were in all respects final.

HUNT
*vs*
Fox, &c.

Hunt has brought the case before this Court for revi. sion; Fox also complains of the decree and has assigned cross errors.

The first objection to the decree on the part of Hunt, is

Objections made to the decree of the Circuit Court.

the dismissal of his bill, so far as it sought relief against his note to Curd and Fox.

As we understand the original transaction between the parties, Faris sold the land to Hunt and McCormick, apprising them, and correctly, of the nature and condition of his title, and his mortgages to Fox, &c., and that $7,000 of the purchase money must be applied for the extinguishment of their lien.

Fox, in view of the appropriation of that amount of the purchase money to the use of himself and the other mortgagees, undertakes, upon the payment thereof, to release the mortgages. He made no sale of the interest of the mortgagees, nor were Hunt and McCormick, upon the mere release of the mortgages, bound to pay him the $7,000. Such was not the nature of the transaction. But the bond of Fox was a mere guaranty to the purchasers, that the lien of the mortgages did not exceed that sum, and upon the payment of it that their lien should be extinguished.

A mortgagor sold land with the assent of the mortgagees, who agreed to release their mortgage on receiving a certain amount of the price, of which he received part and the note of the purchaser for the remainder, the mortgagees did release their mortgage, but the mortgagor being unable to make title, the contract was rescinded—Held that the mortgagees surrender the unpaid note and be reinstated in their mortgage lien to that

The consideration of the note in question, was the purchase money for the land thus sold by Faris to Hunt and McCormick. It is so recited in the note and so expressly admitted by the pleadings. The note is a promise to pay Curd and Fox $1,608 80, the balance of Hunt's half of the $7,000 of the purchase money. But it was not received by them as a payment of so much of the purchase money, nor as a payment on account of their mortgages. They claim the amount in their bill as so much of the purchase money which Hunt agreed to pay upon his purchase from Faris; and they further alledge, that by an arrangement between them and Faris, they were to have the proceeds of said sale; that they apprised Hunt of the fact, and he executed to them the note. They are, moreover, careful to recite in their deed of release to Hunt, that "$1,608 80, part of said Hunt's half of the purchase for said lands, remains unpaid, together with the interest." It was designed, when paid, to be

in full of so much of the $7,000 which Hunt was bound to pay, and was no doubt intended, also, when paid, to remove the incumbrance of the mortgages upon the lands, or so far as Hunt was interested. But the note did not have that effect. The mortgages were not upon the execution of it, thereby released to any extent. Fox was not bound to release even as to a moiety of the land, till the note was paid. Did the note then, impose upon Hunt any additional liability to pay that amount of the purchase money? Curd and Fox did not surrender in consideration of it, any of their rights; their lien upon the lands, so far as the note was concerned, remained unimpaired.

The note was executed on the 4th and no doubt preparatory to, and in anticipation of a conveyance by Faris. McCormick. whose deposition was taken by Hunt, says that he and Hunt went to Pulaski to receive the title, and although Faris was not prepared to make it to all the lands, yet as he was in a condition to convey a large portion, and that the most valuable, they agreed to take it as far as he could make it, and that the title to the residue was to be perfected and conveyed by another deed. On the 5th Faris acknowledged a deed bearing date in April preceding, before the Clerk, and as he proves, in the presence and at the request of Hunt and McCormick, and that the deed remained with him to take the relinquishment of the dower of Mrs. Faris, the tax not being paid upon it nor any directions given for recording it. But McCormick says Hunt left the whole matter in reference to the deed to him, and that he did not receive the deed or leave it in the office to be recorded, or for any further action upon it till Mrs. Faris should relinquish her dower; that the deed was left in the office for the purpose of being *completed* by the relinquishment of her dower. It is true he says afterwards, that he and Hunt agreed to take the deed as far as Faris could make the title, and the dower of Mrs. Faris was to be relinquished. But Hunt expressly denies in his answer, that he ever accepted the deed or authorized any one to receive it for him. McCormick also, in his answer, states that it was distinctly understood between him and Faris. that the deed should only be accepted and considered as a deed after

**HUNT**
*vs*
**Fox, &c.**

extent, and that the purchaser have a lien for the part paid, but subordinate to the lien of the mortgagees, if the amount could not be made of that part of the land purchased, not covered by the mortgage.

HUNT
vs
FOX, &c.

the ackeowledgment and relinquishment of dower by Mrs. Faris. The deed was drawn in the name of Faris and wife; her dower was an incumbrance, and as it turned out, a very serious one upon the title, and it is very evident that her acknowledgment was contemplated by all parties, and deemed essential to render the deed complete, and acceptable to Hunt and McCormick; Mrs. Faris afterwards declined relinquishing her dower. Although the question is not free from doubt, yet in view of all the facts and circumstances, we are not satisfied that the deed was accepted upon the acknowledgment of Faris, by either Hunt or McCormick. The title, therefore, to the lands embraced in it, was not made as we are authorized to presume it was understood it would be, upon the execution of the note.

As it does not appear then, that the note was given by Hunt upon any new consideration, or upon the surrender or in prejudice of any of the rights or indemnities of Curd and Fox, it seems to us that Hunt is entitled to set up all the equity against it, which he could have asserted had it been made payable to Faris.

Assuming this position, it is very clear Hunt was entitled to relief against the note, and that the decree in that respect, is erroneous. Besides the dower of Mrs. Faris, a Mrs. Elliott appears to have asserted a claim to dower in a portion of the lands, and to a part Faris had, at his death, but an equitable title. No effort is made by the heirs of Faris to remove the incumbrances and perfect the title according to the contract of their ancestor; nor has any offer or effort been made by Curd and Fox, except as to the release of the mortgages, which would be insufficient, as we have seen, to subject Hunt to the payment of the note.

In this view of the case we are also of opinion that Hunt was entitled to a rescission of the contract between him and McCormick and Faris, and in that matter that there is no error in the decree.

But it is further objected to the decree on the part of Hunt, that it gives him no relef against Curd and Fox, for the amount paid them in part consideration of the purchase from Faris. It is contended that they should

have been decreed to refund, and if not, that Hunt should have been decreed a prior lien upon the land. It does not appear that there was any express undertaking or assumpsit by Curd and Fox, or either of them, to refund, and according to the construction which we have given to the transaction, there was no *implied* assumpsit. In addition to what has been already said, it may be remarked, that the mortgages of Curd Fox and Fitzpatrick, did not embrace all the lands sold by Faris to Hunt and McCormick, although it may be inferred from what appears in the record, that they embraced the most valuable portion thereof. Faris claimed to be the owner of all the lands. They were described and sold as his lands. He undertakes to remove all incumbrances—to perfect the title, and convey by deed, with general warranty. Two of the motgagees, so far as appears, had no agency whatever, in the sale by Faris. Nor is it in fact shown that Fox had any agency in it, except, that after it had been made by Faris, or the terms agreed on, he assented to it, and gave his bond for a conditional release of the mortgages. But Fox has been guilty of no fraud, has practised no unfairness, and is in no respect in fault. The money paid by Hunt, has been paid upon his purchase from Faris. He paid it, looking to Faris for the title. When he made the purchase and the payments, he was neither ignorant of the condition of the title, nor of the extent and value of the lands. But it is urged, that the rescision must be to the extent of the entire contract, which included Fox, and that the parties should, as far as practicable, be placed in *statu quo*. But what is there to rescind between Fox and Hunt and McCormick? Fox is able and willing, and in fact has performed all that he undertook to perform. He did not undertake to perfect the title, and convey the lands sold by Faris, nor that Faris should do it. He merely undertakes, that upon the payment of $7,000, the mortgages shall be released. It was not a sale of the interest of the mortgagees to Hunt and McCormick, and for which they agreed to pay the $7,000. If it could be viewed in that light, then there is no ground for a rescision. The contract on the part of Fox, is performed. Had the whole $7,000 been paid by Hunt and

McCormick and the mortgages released, could the mortgagees upon a rescision of the contract of purchase from Faris, be called upon to refund? We think not. In that case, it is true, Hunt and McComrick would have an exclusive lien upon the whole land, but it would be upon the ground that the entire interest had vested in Faris by the discharge of the mortgages. In this case, Hunt's lien is limited to the interest of Faris, the value of which has been enhanced in proportion as the lien of the mortgagees has been reduced by the payments which have been made to them. The purchase money paid by Hunt, has, with his knowledge and at his instance, been applied in discharge of the mortgages, but in doing this, he has not acquired the lien of the mortgagees, except as his lien upon the interest of Faris has been thereby rendered more available.

We are of opinion that Curd and Fox are not bound to refund to Hunt the purchase money paid by him, and that the lien of Hunt upon the land, or a moiety thereof, embraced in the mortgages, is subordinate to that of the mortgagees.

On the part of Fox, it is contended that the Circuit Court erred in setting aside the sale by the Commissioner, under the decree of Curd and Fox against Hunt; but from the view which we have taken of the case, we think there is no error in the decree in that respect. As Hunt had not accepted the deed from Faris, he or his representatives were necessary parties, and neither were before the Court. McCormick should also have been made a party. But the sale was in effect controlled and managed by Fox, who had notice before it was made, of the bill of Hunt, and the matters upon which he relied. That Hunt denied the acceptance of the deed from Faris—but offered to pay off the claim of Curd and Fox, provided he could obtain a conveyance according to his contract with Faris. Hunt was a non-resident, and had only been brought before the Court in case of Curd and Fox, by constructive service of process. It is evident the sale was made under circumstances tending greatly to embarrass it and deter purchasers, and the consequence was, that Fox purchased the entire interest of Hunt in all the lands, at a ruin-

ous sacrifice, hardly exceeding a mere nominal price. But Hunt as a non-resident, was permitted to file his answer, and open the decree, and taking into consideration the attitude in which Curd and Fox stood to Hunt, in regard to his original purchase and the whole transaction, the notice to Fox, of the matters relied on by Hunt, the price at which the lands were sold, the want of parties in the suit of Curd and Fox, it was evidently right, upon the final hearing of the cause, when the claim of Curd and Fox was found invalid, that the deed from Faris conveyed no title to Hunt, and that he was entiled to a rescision of his contract of purchase, to set aside the sale made by the Commissioner.

How much McCormick has paid on account of the purchase from Faris, or what may be his attitude in reference to the mortgagees, is not shown, and is deemed unimportant, as it seems to be understood and agreed on all sides, that the interests and rights of Hunt and the mortgagees, it being conceded that the estate of Faris is wholly insolvent, are alone ivolved in this controversy. They are, in fact, the only litigants.

We think the Court below very properly appointed Commissioners to take an account of the rents and profits of the lands in contest, since they came into the possession of Hunt and McCormick under their purchase from Faris. Also to ascertain and report what amount on account of that purchase had been paid by Hunt—also to ascertain to what extent the lien of the mortgagees remains undischarged. These facts being ascertained, the Court should decree a sale of a moiety of all the interest of the heirs of Faris in all the lands sold by Faris to Hunt and McCormick, which are not embraced in the mortgages to Curd, Fox and Fitzpatrick. The proceeds of such sale should be applied in payment of such sum as Hunt may be found entitled to for the purchase money paid by him, after an equitable deduction for rents—as upon this fund he has a prior and exclusive lien.

As to the lands embraced in the mortgages, a moiety thereof, or a moiety of such portion thereof, should be subjected to sale, as will satisfy a moiety of what the mortgagees may be collectively and individually found en-

titled to in virtue of their mortgages—and also such portion of the claim of Hunt as may remain undischarged after applying the proceeds of the sale of the lands not included in the mortgages.

Out of the proceeds, the amount to which the mortgagees may be found entitled as aforesaid, is to be first paid, provided it should not exceed such portion of $3,500 and interest, which, after deducting the payments made by Hunt, remains undischarged. But should the claim of the mortgagees exceed such balance, then in as much as Fox, in effect, guarantied that a moiety of their lien should not exceed $3,500, such balance only is to be paid, and the excess, if any, not to be paid till the residue of the claim of Hunt is discharged.

The small amount of money loaned by Fox to Hunt, unconnected with the land transaction, should be presumed to have been settled, when the note for $1,608 80 was executed, out of money previously advanced by Hunt, so as to leave of the $3,500, the amount of the note, unpaid.

As to so much of the decree as rescinds the contract between Faris and Hunt and McCormick, and sets aside the sale by the Commissioner, under the decree of Curd and Fox against Hunt. And also as to so much thereof as cancels the deed from Faris to Hunt and McCormick, so far as Hunt is concerned—and also as to so much thereof as appoints Commissioners to take an account of rents, &c., to ascertain the purchase money paid by Hunt, and the extent of the lien of the mortgagees, it is affirmed. And as to the residue of the decree, it is reversed, and the cause remanded, that a decree may be rendered perpetually enjoining the defendants, Curd and Fox, from the collection of the note of Hunt to them for $1,608 80, and for further proceedings and decree consistent with the principles of this opinion.

*B. Monroe and Kincaid* for plaintiff: *Harlan & Craddock and Robertson* for defendants.